# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

CHERYL HALL, and BRAD
LAFUZE, on behalf of themselves and
all others similarly situated,

    Plaintiffs,

v.

WELLPATH, LLC,

    Defendant.

Case No. 20-cv-10670
Hon. George C. Steeh
Mag. Judge Patricia T. Morris

| LIDDLE & DUBIN, P.C. | CHAPMAN LAW GROUP |
|---|---|
| Steven D. Liddle (P45110) | Ronald W. Chapman Sr., M.P.A., |
| Matthew Z. Robb (P81665) | LL.M. (P37603) |
| Attorneys for Plaintiffs | Wedad Suleiman (P81970) |
| 975 E. Jefferson Avenue | Attorneys for Wellpath, LLC |
| Detroit, MI 48207 | 1441 W. Long Lake Rd., Suite 310 |
| (313) 392-0025 | Troy, MI 48098 |
| sliddle@ldclassaction.com | (248) 644-6326 |
| mrobb@ldclassaction.com | rchapman@chapmanlawgroup.com |
| | wsuleiman@chapmanlawgroup.com |

**DEFENDANT WELLPATH, L.L.C.'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

**PROOF OF SERVICE**

In their Response, Plaintiffs repeatedly mistake the purpose and effect of the well-founded policies. Plaintiffs call for impractical reform of prison medical care that is not supported by constitutional considerations. When considering the actual, full policies set in place by Wellpath, which the Plaintiffs have referenced and quoted both in their Complaint and their Response, the "allegedly unconstitutional policies" are well-founded both in terms of medical considerations as well as in terms of practicality. The Sixth Circuit has held that in certain circumstances, a document that has not been formally incorporated by reference or that was not attached to the complaint may still be considered in the pleadings. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); "This occurs when 'a document is referred to in the complaint and is *central* to the plaintiff's claim…" *Id*. In this event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id. see e.g.*, *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). In *Greenberg v. Life Insurance Co.*, the Sixth Circuit Court of Appeals determined that each of the causes of action relates to and arose from the insurance policies in question, and thus it was proper for the district court to consider the policies themselves in the motion to dismiss. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999). The case at bar is identical, considering the fact that each of Plaintiffs' claims cite and reference five (5) of Wellpath's

policies which are outlined further in Plaintiffs' Response brief. The policies Plaintiffs specifically cite to and reference are; the Drug Classification System (**PageID.162**) (**Exhibit A**), the Medication Verification Policy (**PageID.163**) (**Exhibit B**), the Formulary Policy (**PageID.163**) (**Exhibit C**) the Mental Health Evaluation Procedure Policy (**PageID.164**) (**Exhibit D**), and Wellpath's policies regarding a detainee's opportunity to be heard for their complaints (**PageID.165**). Plaintiffs have cited excerpts of the policies both in the Complaint (**ECF No. 8**) and their Response brief (**ECF No. 14**). Thus, it is proper, pursuant to *Greenberg,* to refer directly to the actual policies Wellpath has enacted, given Plaintiffs' misrepresentations in their Response to the instant motion.

Wellpath's Drug Classification System and the Medication Verification Policy are argued to have given rise to alleged constitutional violations to the three named Plaintiffs. (**PageID.162-63**). When referencing the policies regarding drug classification enacted at both Wayne County Jail (WCJ) and Grand Traverse County Jail (GTCJ), both titled "HCD-100 E-09B Timely Initiation of Medication Upon Arrival" (**Exhibit A**), it is unclear how Plaintiffs arrived at the legal conclusions necessary to assert such allegations. The policy itself outlines that the purpose is "to ensure that patients receive appropriate medications and that medications are administered in a timely manner upon admission to the facility." (**Exhibit A, p. 1**). The policy establishes that "High-Priority medication" are those which should not

be interrupted given clinical necessity and the short half-lives of the medication and thus, when possible, to continue the medications without a single missed dose. (*Id.* **at p. 2**). Furthermore, the policy states that "Routine medications will be attempted to be verified within 24 hours, <u>or sooner</u>, of notification of the medication to health care staff. <u>Routine medications will generally be administered within 48 hours of notification</u> to health care staff, when ordered by a Wellpath prescriber or authorized prescriber." (*Id*. **at p. 3**.) The Medication Verification policy (**Exhibit B**), outlines that the purpose of the policy is to ensure a process to verify reported medications and then offers Wellpath prescribers the opportunity to use their medical judgment to determine whether to continue, substitute, or discontinue based on clinical necessity. (**Exhibit B, p. 1**). "Medication verification" is described as the process by which an outside prescriber's prescriptions are attempted to be confirmed and reported to credentialed Wellpath prescribers or an authorized prescriber for that medical professional to determine whether to continue, substitute, or discontinue the medication <u>based on clinical need</u>. (*Id*. **at § 3**) (emphasis added). The "lower level staff" Plaintiffs refer to for initiation of this procedure are in fact "Qualified Health Care Professionals".[1] *(Id*. **at § 5***)* Importantly, the policy protects Wellpath

---

[1] Defined by the policy as "physicians, physician assistants, nurses, nurse practitioners, dentists, dental hygienists, dental assistants, MAs, CNAs, mental health professionals, and others who by virtue of education, credentials, and experience are permitted by law to evaluate and care for patients".

prescribers' right to exercise their own independent medical judgment by outlining that the option to decline prescribing medications should be invoked <u>when the medication is not clinically indicated</u>. (***Id*. at § 6.6**) Despite the fact that Plaintiffs allege that this Wellpath policy allows Wellpath staff to pretend current medications "was ever [sic] prescribed" (**PageID.163**), and that Wellpath cuts people off for non-medical reasons, the policy itself states otherwise. (***Id*. at § 6.6**)

Plaintiffs' argument that Wellpath's established Medication Classification system and Medication Verification policy are unconstitutional is without merit. In order to set out a legally cognizable claim sufficient to pass the threshold of a Motion to Dismiss, Plaintiffs surreptitiously "piece-mealed" the policies together to paint an inaccurate picture of Wellpath's corporate policies. When referencing the policies for which Plaintiffs cite to in their Complaint and Response, it is clear that the policies are in place to ensure a stream-lined process that allows jail medical staff to verify that a detainee is actually prescribed the medication they say they are prescribed, before providing the detainee with controlled substances under their own prescription powers. The policy ensures this while simultaneously eliminating the risk that detainees who do not have outside prescriptions or clinical indication for treatment do not gain access to controlled substances without exhibiting a medical need for treatment. The National Commission on Correctional Health Care (NCCHC), outlines that, policies such as that which Wellpath has in place, are

5

important for ensuring detainees receive their medication in a timely fashion; yet, "[c]linical need is the key factor; therefore, medications should be prescribed <u>only when they are clinically indicated</u>."[2]

In *Calhoun v. Ramsey*, the plaintiff brought suit against the Sheriff of Kane County, Illinois and the health service contracted to provide services to the county jail, alleging deliberate indifference for their practice of not pre-verifying medications despite the fact that the plaintiff requested approval to take blood pressure medication prior to his arrival to the jail. *Calhoun v. Ramsey*, No. 00 C 3307, 2003 U.S. Dist. LEXIS 5090, at *22 (N.D. Ill. Mar. 28, 2003), *aff'd Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005). The court analogized the case to *DeGenova v. Sheriff of DuPage County*, where the policy indicated healthcare staff will <u>attempt</u> to contact your doctor for information to determine the need to continue treatment." *Id*. at *24; citing *DeGenova v. Sheriff of DuPage Cnty.*, Case Number: 97 C 7208, 2001 U.S. Dist. LEXIS 17779, at *9 (N.D. Ill. Oct. 30, 2001). The court found "[c]ontrary to [plaintiff's] assertions otherwise and based on the particular facts of this case, the Eighth Amendment simply does not require that Jail physicians be located on site for purposes of prescription medication verification." *Calhoun*, No. 00 C 3307, 2003 U.S. Dist. LEXIS 5090, at *28). When taking in account the entirety of Wellpath's Medication Verification policy and Drug Classification System, it is

---

[2] https://www.ncchc.org/spotlight-on-the-standards-23-2

abundantly clear that the policy does not reflect a deliberate indifference to a detainee's serious medical needs; but rather, reflects a mindset focused on ensuring that detainees receive proper, clinically indicated medical treatment, which includes treatment provided by community medical providers. Plaintiffs' allegations ask the Court to take medical judgment out of the hands of the providers who work in the prison medicine setting and instead place it firmly in the hands of what a detainee or their family members communicate to medical or correctional staff on intake.

Plaintiffs also allege that Wellpath's practice and policy of maintaining an official formulary for their employees to use when determining medications to prescribe is deliberately indifferent to a pre-trial detainee's serious medical needs;. Wellpath does not require Site Medical Directors to identify substitute medication or advocate for prescription of non-formulary medications, and they do not require an individualized mental health assessment by a Qualified Mental Health Professional (QMHP) prior to formulary based determinations regarding medications. (**PageID.163-64**). The policies which Plaintiffs allege to be unconstitutional are titled HCD-100 D-02 Medication Services (**Exhibit C**) and tangentially relevant is HCD-100 E-05 Mental Health Screening and Evaluation. The purpose of the Medication Services policies is to "ensure that medication services are clinically appropriate and provided in a timely, safe, and sufficient manner." (**Exhibit C, p. 1**). Specifically, § 6.4 states, "Wellpath maintains a

7

medication formulary and an established non-formulary medication ordering and approval process that <u>ensures non-formulary medications are obtained in a timely manner</u>." Lastly, § 6.7 ensures that "[p]atients entering the facility on verifiable prescription medication continue to receive the medication in a timely fashion as prescribed, or acceptable <u>alternate medications are provided as clinically indicated. Justification for an alternate treatment plan is documented</u>." (***Id*. at p. 3**) The policies themselves reference the NCCHC Standards. Formularies are an accepted tool in medicine, widely used by medical specialty groups, health care providers and insurers.[34] The Sixth Circuit has even recognized the usefulness of drug formularies in the jail and prison setting in *Darrah v. Krisher,* 865 F.3d 361, 372-73 (6th Cir. Ohio, July 27, 2017). Wellpath's policies regarding the drug formulary focus on prescribing based on symptoms and conditions clinically indicated, and assurance that a non-formulary approval process is established, and are not deliberately indifferent to a detainee's medical needs. The use of a formulary is a well-established practice in medicine, as is the practice of prescribing medications only when a clinical need is indicated.

      Plaintiffs further allege that Wellpath policies do not require a mental health evaluation to be conducted within thirty (30) days of a positive mental health

---

[3] https://www.medicare.gov/Pubs/pdf/11136-Pharmacies-Formularies-Coverage-Rules.pdf
[4] https://www.healthaffairs.org/do/10.1377/hpb20171409.000177/full/

screening, which reflects a policy of deliberate indifference (**PageID.164-65**). However, both the policies in place at WCJ and GTCJ directly refute Plaintiffs' allegations. The policy in effect at both WCJ and GTCJ is titled, "HCD-100 E-05 Mental Health Screening and Evaluation" (**Exhibit D**), and while the definitions section for "Mental Health Evaluation" states that an evaluation shall be completed within thirty (30) days of a positive screen, the policy, when read as a whole, tells a more complete procedure. (**Exhibit D, pg. 3**). The procedure involves an initial intake process followed by a qualified health professional or mental health professional who conduct a mental health screening within fourteen (14) days of admission. (*Id.*) After the screening a referral is drafted if the detainee reflects a need for mental health treatment. The policy ensures that patients who have needs which exceed the facilities' abilities will then be ttransferred to a location where their needs can be met. (*Id.*) When a detainee has a positive or concerning result in the mental health screening, they are referred to mental health staff for further assessment. The policy states at § 6.4, "[a]ny referrals by a Qualified Health Professional (QHP) will be triaged and assigned for follow-up. As a priority, <u>emergent referrals will be addressed first</u>, while <u>routine</u> referrals will be seen <u>within seven (7) days for sites with 40 hours-a-week mental health coverage;</u> within ten (10) days at sites with less than 40 hours-a-week coverage; and within fourteen (14) days at sites with less than 10 hours-a-week coverage." (*Id.* **at p. 5**). This specific policy comes directly from

9

the NCCHC standards and references ACA standards. The NCCHC states that the initial mental health screening with a QHP should be conducted within fourteen (14) days of intake, and if the detainee is positive for mental health problems, then the inmate should be referred to mental health services.[5] The American Correctional Association has promulgated standards as well, titled as, "Adult Local Detention Facility" standards ("ALDF"), which support Wellpath's policies directly as they are written. 4-ALDF-4C-24 states, "A comprehensive health appraisal for each inmate is completed within 14 days after arrival at the facility." Wellpath's policies regarding Mental Health Screening and Evaluation follow the best practices promulgated by correctional health associations to the point that they are nearly identical. Perhaps, the only recognizable change, stems from the varying times it may take a detainee to be evaluated by a mental health professional, but this delay is at most fourteen (14) days from a positive screening for prison facilities with the minimum number of contracted hours for mental health services, and as the policy states, only for less emergent or serious cases. In facilities contracted for 40 hours-a-week mental health coverage, such as GTCJ,[6] routine referrals are seen within

---

[5] https://www.ncchc.org/mental-health-screening-evaluation
[6] https://www.traverseticker.com/news/county-scrutinizes-medical-funding-issues-at-jail/#:~:text=According%20to%20Grand%20Traverse%20Sheriff,climb%20to%20%24615%2C000%20in%202020. ("The county also contracts with Northern Lakes Community Mental Health to provide two full-time mental health professionals at the jail…")

10

<u>seven (7)</u> days of the positive screening. This is a far cry from the "45 days before having the opportunity to be evaluated by a Qualified Mental Health Professional" (QMHP) that Plaintiffs allege in their Response (**PageID.165**) and Complaint. (¶ 301-314). When contrasting Plaintiffs' allegations with the promulgated policy, it is quite clear that Plaintiffs have grossly misinterpreted Wellpath's policies in order to support their deliberate indifference claims.

As for Plaintiffs' allegation that Wellpath fails to notify patients of medication denials and does not provide a process for appealing the denial of medication, Plaintiffs' own factual assertions deny such allegations. In Plaintiffs' Response, they allege that Mr. Lafuze was instructed to "kite" medical care for an appointment with a psychiatric nurse, which Mr. Lafuze did, and in response, he was scheduled an appointment. (**PageID.168**). Plaintiffs' factual allegations reflect that there is in fact a process for getting into contact with healthcare, via "kite" communications, in order to request medication or an appointment. Plaintiffs' factual allegations do not support the legal argument put forth regarding a policy or practice denying detainees the ability to be heard regarding denial of treatment. Given this, Plaintiffs' theory of deliberate indifference regarding this policy must be dismissed.

When referencing the full policies that Plaintiffs surreptitiously cite, it is clear that Wellpath has set policies that reflect the best standards of practice according to the NCCHC guidelines and community prescribing guidelines.

WHEREFORE, Defendant WELLPATH, L.L.C., respectfully requests this Honorable Court grant Defendant's Motion to Dismiss, dismiss all claims against it with prejudice, and provide any and all such other relief as the Court deems just and equitable.

                                              Respectfully Submitted,
                                              CHAPMAN LAW GROUP

Dated: August 5, 2020              /s/Wedad Suleiman
                                              Ronald W. Chapman Sr., M.P.A., LL.M. (P37603)
                                              Wedad Sulieman (P81970)
                                              Attorneys for Wellpath, LLC
                                              1441 W. Long Lake Rd., Suite 310
                                              Troy, MI 48098
                                              (248) 644-6326
                                              rchapman@chapmanlawgroup.com
                                              wsuleiman@chapmanlawgroup.com

## **PROOF OF SERVICE**

I hereby certify that on August 5, 2020, I presented the foregoing paper to the Clerk of the Court for filing and uploading to the ECF system, which will send notification of such filing to the attorneys of record listed herein and I hereby certify that I have mailed by US Postal Service the document to the involved non participants.

                                              /s/Wedad Suleiman
                                              Wedad Sulieman (P81970)
                                              1441 W. Long Lake Rd., Suite 310
                                              Troy, MI 48098
                                              (248) 644-6326
                                              wsuleiman@chapmanlawgroup.com